Filed 11/24/25 Commodity Trucking Acquisition v. Gilleon Law Firm CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COMMODITY TRUCKING ACQUISITION LLC, Plaintiff and Appellant, v. GILLEON LAW FIRM APC et al., Defendants and Respondents. | D084289 (Super. Ct. No. 37-2017-00020564-CU-DF-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz and Loren G. Freestone, Judges. Affirmed.

Johnson Law Firm, J. Craig Johnson; Shaumyan & Derbarseghian, Alfred Shaumyan and Aren Derbarseghian, for Plaintiff and Appellant.

Gilleon Law Firm, James C. Mitchell; Winet Patrick Gayer Creighton & Hanes and Randall L. Winet, for Defendants and Respondents.

Plaintiff Commodity Trucking Acquisition, LLC appeals a jury verdict in favor of Defendants Daniel Gilleon and Gilleon Law Firm, APC. Commodity sued Gilleon and his firm for defamation. The complaint alleged that in 2017, Gilleon falsely claimed Commodity required its commercial truck drivers to text while driving. A jury ultimately concluded defendants were not liable because Gilleon's statements were not false.

On appeal, Commodity argues it was prejudiced by the trial court's inclusion of the 2016 version of Vehicle Code[1] former section 23123.5 in the jury instructions instead of the 2017 version. Because evidence credited by the jury supported a conclusion that drivers were reading their texts while driving in a manner that violated both the 2016 and 2017 versions of section 23123.5, we do not see a reasonable likelihood that the instruction affected the verdict. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Commodity is a trucking company with operations throughout Southern California. On April 25, 2017, Thomas Aylott, represented by Gilleon, filed a complaint against Commodity for wrongful termination and "retaliation for refusing to break the law by texting while driving." In his complaint, Aylott alleged that Commodity's branch manager had expressed "obvious frustration" at Aylott's inaccessibility during the work day and "comment[ed] that Aylott should text and drive 'like everyone else.' "

---

[1] Further statutory references are to the Vehicle Code.

Gilleon e-mailed a reporter at the San Diego Union-Tribune to publicize the lawsuit, claiming in a statement, "[W]hat [Aylott's] case shows is maybe it's worse than we thought because apparently truckers are putting all our lives at risk because texting and driving is a requirement of the job." Gilleon also spoke with reporters at the local ABC News affiliate, Channel 10News, which broadcast a clip of Gilleon commenting with regard to Commodity Trucking, "Well, we have 80,0 00 pounds of steel moving down the road . . . being required to text and drive, and that's really scary for all of us."

Commodity sued Gilleon and his firm for defamation. The litigation largely turned on the truth or falsity of Gilleon's statements. Gilleon contended that Commodity truckers were texting while driving, and that the company's practice of texting drivers instructions about current and future jobs meant texting was essentially mandatory.

Gilleon presented testimony from two former Commodity truck drivers, one of whom testified, "[I]f I stopped and set the brakes, then I could text at a stoplight or stop sign." He said he would also read his texts as they came in, "tak[ing] [his] eyes off the road and look[ing] at the information for when it got sent." He confirmed he felt "required to do that" to ensure he got jobs. Another driver testified there were times he felt it was necessary to look at his text messages while driving. He said he would do so about once a week while working for Commodity.

One of the former Commodity drivers testified he did not have text-to-voice technology in 2017. The other confirmed the company did not provide him with "some type of device or hands-free" for his company phone. The owner of Commodity also testified that drivers did not have a text-to-voice option to read text messages in 2017. He said he believed drivers would have had to manipulate their phones to read their texts, testifying, "On my phone

3

I have to pull up the text. I don't—in all our—I don't know what the technology was back in 2017. But we've always used Android phones for our drivers. [¶] And I don't—I think you have—you get a ping that there's a text, and then you have to open it. But that's using your hand."

Although Gilleon's allegedly defamatory statements did not reference the Vehicle Code, the legality of texting while driving came up several times over the course of the trial. Commodity's former dispatcher agreed "[y]ou wouldn't want to have a system in place where truck drivers were encouraged to take a look at their cell phones as part of their work," "[b]ecause that would be dangerous" and "against the vehicle code." Aylott similarly agreed "that reading texts was wrong and against the vehicle code" in 2017. Both of the former Commodity drivers testified they thought texting while driving was against the law.

At defendants' request, the court read a section of the Vehicle Code during jury instructions:

> "There's been some discussion in this case about the vehicle code, so I'm going to read you the vehicle code so you have it. So this is Vehicle Code 23213.5 [*sic*], A through C. This was in effect in 2017 and it states: [A] a person shall not drive a motor vehicle while using an electronic wireless communication device to write, send or read a text-based communication unless the electronic wireless communication device is specifically designed and configured to allow voice-operated and hands-free operation to dictate, send or listen to a text-based communication and it is used in that manner while driving.
>
> "[B] As used in this section -- this is the previous section -- write, send, or read a text-based communication means using an electronic wireless communications device to manually communicate with any person using a text-based communication, including but not limited to communications referred to as text messages, instant message or electronic mail.

4

"Section [C]:  For purposes of this section, a person shall not be deemed to be writing, reading or sending a text-based communication if the person reads, selects or enters a telephone number or name in an electronic wireless communication device for the purpose of making or receiving a telephone call or if a person otherwise activates or deactivates a feature or function on an electronic wireless communication device."

Contrary to the court's instruction, this was not the version of section 23123.5 in effect in 2017, but rather a version that had been repealed as of January 1, 2017.  (See Stats. 2016, ch. 660, § 2 [former section 23123.5, subdivision (a), effective January 1, 2017, through January 1, 2018, is quoted in our analysis *post*].)  Commodity did not object on the ground the instruction included the wrong version of the statute, although it did argue the code section was not relevant.

The parties both pointed to the Vehicle Code instruction in their closing arguments.  Commodity's counsel argued:

"The judge just read you the vehicle code.  It said 'hands-free,' right?  And if you have your hands on the wheel and a call comes in, that's not—and you see who's calling you, that's not texting and driving.

"And Mr. Gilleon, he didn't go on TV and say, Hey, you know what Commodity Trucking is doing or what their drivers are doing?  They're glancing at their phones.  They're taking a peek at their phones.  That's not what he said.  He said texting and driving.  And we all know what that means.  It's typing.  It's sending a message.  It's responding to a message.  That's what's dangerous.  That's why we're putting all of your lives at risk, according to Mr. Gilleon, because we're going down the freeway in 80,000 pounds of steel, texting and driving."

Defense counsel argued:

> "Now, counsel, in making his argument to you, has misstated the law. He's trying to tell you that texting just means this. That's not the law. You're going to be provided a jury instruction, and it's Special Jury Instruction number 2. . . ."

> "All right. Maybe if we could take the top, the A section of the first paragraph. This is the vehicle code section. A person shall not drive a motor vehicle while using an electronic wireless communication device, phone, to write, send, or read a text-based communication. Unless the electronic communication device is specifically designed and configured to allow voice-operated and hand-free operation to send or listen. In other words, you can't text, you can't write, you can't send, you can't read. Very well understood. We go back to the time when we were questioning everybody. Everyone understands that.

> "It's remarkable that in order to try to get you to find their way, that plaintiff is now saying, you know, texting means this. It doesn't mean reading. Well, they're just wrong. They're misstating the law.

The jury returned a verdict in defendants' favor after approximately 30 minutes of deliberation. The jury found Gilleon made statements that "had a natural tendency to lessen Commodity's profits" but that his statements were not false.

## DISCUSSION

"[T]he propriety of a jury instruction is a question of law, [citation] which we must consider de novo." (*Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1046.) "[I]nstructional error in a civil case is not grounds for reversal unless it is probable the error prejudicially affected the verdict." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1217.) Thus, "[i]n addition to showing an instructional error occurred, an appellant must establish the error was prejudicial." (*Harb v. City of Bakersfield* (2015) 233 Cal.App.4th 606, 617.)

Commodity claims the trial court's error in providing jurors with the 2016 version of former Vehicle Code section 23123.5 was prejudicial because they could not have found Commodity drivers violated the 2017 version of the statute. Analyzing this contention requires an understanding of the difference between the two versions, particularly with respect to reading text messages.

Before 2017, section 23123.5, former subdivision (a) prohibited "driv[ing] a motor vehicle while *using* an electronic wireless communications device *to . . . read a text-based communication*" unless the cell phone was being used in a voice-operated *and* hands-free mode.[2] (Italics added.) After January 1, 2017, the focus of subdivision (a) changed. Now, drivers could not "drive a motor vehicle while *holding and operating* a *handheld . . .* electronic wireless communications device" unless the cell phone was being used in a voice-operated *and* hands-free mode.[3] (Italics added.)

---

[2] Section 23123.5, former subdivision (a) of the statute reads: "A person shall not drive a motor vehicle while using an electronic wireless communications device to write, send, or read a text-based communication, unless the electronic wireless communications device is specifically designed and configured to allow voice-operated and hands-free operation to dictate, send, or listen to a text-based communication, and it is used in that manner while driving." (Stats. 2012, ch. 92, § 1 [repealed].)

[3] Section 23123.5, former subdivision (a) of the new statute read: "A person shall not drive a motor vehicle while holding and operating a handheld wireless telephone or an electronic wireless communications device unless the wireless telephone or electronic wireless communications device is specifically designed and configured to allow voice-operated and hands-free operation, and it is used in that manner while driving." (Stats. 2016, ch. 660, § 2, eff. Jan. 1, 2017.) Although there is a further qualification added in subdivision (c) of the 2017 version, Commodity does not argue this part of the statute was relevant and we therefore do not address it. (See, e.g., *Asaro v. Maniscalco* (2024) 103 Cal.App.5th 717, 728, fn. 4 (*Asaro*) [a party forfeits arguments not briefed on appeal].)

Commodity asserts "[t]here is no evidence to support the jury's finding that Gilleon's statements were not false in the absence of" the erroneous instruction quoting the 2016 version of the statute. It contends the evidence only supports a finding that drivers were "read[ing]" their text messages, a violation of the 2016 statute, and not "holding and operating" their phones in violation of the 2017 statute. Because the court provided the jury with the seemingly broader 2016 version, Commodity asserts the jurors were misled into thinking that reading a text message without holding or operating the phone was against the law. Commodity believes the jury found that Gilleon's statements were not false due to this misimpression.

Gilleon's two allegedly defamatory statements were:

1. "This case confirms what we all expected but didn't want to believe, which is that truck drivers behind the wheels of 100,000 pound hunks of steel are texting and driving. But what this case shows is maybe it's worse than we thought -- because apparently truckers are putting all of our lives at risk because texting and driving is a requirement of the job." and

2. "Well, we have 80,000 pounds of steel moving down the road being required to text and drive, and that's really scary for all of us."

Neither statement concerns the Vehicle Code or references the alleged illegality of the trucker's conduct.

The court did not instruct the jury otherwise, stating, "There's been some discussion in this case about the vehicle code, so I'm going to read you the vehicle code so you have it." The court's Vehicle Code instruction was

8

thus tangential to the issue of falsity, and we are not convinced the jury was led to believe otherwise.[4]

It is true that both parties' closing arguments referred to the statute, suggesting it was relevant to the meaning of "texting and driving." The defendants' argument especially linked the two, stating, "[Plaintiff's counsel is] trying to tell you that texting just means this. That's not the law."

Nonetheless, the jury split 9 to 3 on whether Gilleon's statements were true. As Commodity conceded in its closing argument, and as it concedes on appeal, the evidence established that Commodity drivers read their text messages while driving. On this record, the jury should have been unanimous on this question if it had been relying on the 2016 version of former section 23123.5 to determine falsity. (See Stats. 2012, ch. 92, § 1 [amending statute to 2016 version].) We therefore think it more probable that the jury split over whether the statements were literally or substantially true based on the jurors' understanding of Gilleon's meaning.

Even if we were to assume the jury was confused and relied on the 2016 statute to inform its understanding of falsity, we do not think Commodity has shown prejudice. Commodity argues "the evidence tends to support that the jury would have reached the opposite conclusion if the correct law was given," because "[m]erely reading a text message while not holding and operating an electronic device was not a violation of the law in 2017." But evidence that drivers were reading their texts, apparently credited by the jury, indicated drivers were "holding and operating" their phones to do so.

---

4    Although the oblique relevance of the statute also suggests it may have been error to introduce *any* version of section 23123.5, Commodity does not raise that argument on appeal, and we therefore do not address it. (See, e.g., *Asaro, supra*, 103 Cal.App.5th at p. 728, fn. 4.)

Both a former driver and the owner of Commodity testified drivers did not have text-to-voice technology in 2017. Another driver confirmed the company did not provide him with a hands-free device for his phone. Commodity's owner testified he thought drivers in 2017 would have had to open their text notifications using their hands to read their messages. In light of this testimony, we do not think there is any reasonable likelihood the jury assumed Commodity drivers either used hands-free technology or would have only read their messages if their phones were already in sight and unlocked.

In addition, one of the former Commodity drivers testified he would also send text messages while driving, stating, "[I]f I stopped and set the brakes, then I could text at a stoplight or stop sign." He added, "From my understanding, the law says you still can't do it. Somebody goes, Oh, I do it at the [stoplight]. That's still technically illegal, to my understanding." Commodity does not acknowledge this testimony, which also appears to establish a violation of the 2017 version of the law.[5]

We therefore do not see a reasonable probability of a different verdict had the court read the 2017 version of the statute. Because we resolve this issue against Commodity, we do not reach the alternative argument that the trial court abused its discretion by failing to grant a motion for new trial due to instructional error. Nor need we address Commodity's argument about an unrelated evidentiary ruling concerning republication of Gilleon's statements.

---

[5] Our analysis accepts the party presentation of this case, and we do not purport to construe either version of the statute as a matter of law.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to recover their costs on appeal.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.